IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SOGEFI USA, INC.,

        Plaintiff,

v.                                CIVIL ACTION NO.  3:21-0262

INTERPLEX SUNBELT, INC.,
a Florida corporation,
INTERPLEXICO MANUFACTURING
COMPANY, S.A. de C.V.,
a Mexico corporation,

        Defendants.

**TEMPORARY RESTRAINING ORDER**

This matter came before the Court upon Plaintiff Sogefi USA, Inc.'s ("Sogefi") Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 2. Having considered the Motion and the supporting declaration and exhibits, this matter is ripe for decision. The Court **GRANTS, in part**, Sogefi's Motion for Temporary Restraining Order and Preliminary Injunction for the reasons set forth below. The Motion is granted to the extent it seeks a temporary restraining order.

### I.   BACKGROUND[1]

Sogefi filed its Complaint seeking a preliminary injunction, a permanent injunction, and declaratory relief against Defendants Interplex Sunbelt, Inc., and Interplexico Manufacturing Company S.A. de C.V. ("Interplex Mexico") on April 22, 2021. Sogefi contemporaneously filed a motion for temporary restraining order and preliminary injunction asking the Court to prohibit

---

[1] In support of this Motion, Sogefi submitted a sworn declaration from its Plant Manager Troy Davis. ECF No. 2-2. For the sole purpose of this Motion, the Court accepts the facts sworn to by Troy Davis as accurate.

Interplex Mexico from violating its contractual obligations and requiring it to continue performance of its contractual obligations to timely deliver to Sogefi all of the automotive components ordered by Sogefi at the prices agreed upon in the parties' contract.

Sogefi, as buyer, and Interplex Mexico, as seller, are parties to a contract for the supply of automotive component parts, originally dated June 28, 2018, and most recently amended on September 25, 2019 (the "Agreement"). Specifically, under the Agreement, Interplex Mexico manufactures and supplies actuator covers for incorporation into automotive components (collectively, the "Parts") to Sogefi, which Sogefi in turn incorporates into the products Sogefi supplies just-in-time to its original equipment manufacturer customer.

Sogefi's North American General Purchasing Terms and Conditions ("GTC") are incorporated into the Agreement by reference. The Agreement, the GTC, and the various other documents contemplated by the Agreement, including purchase orders and releases, form the entire agreement between the parties. Interplex Mexico accepted the Agreement and the GTC through, among other things, manufacturing and shipping the Parts.

Rather than being for a set term, the Contract sets forth a requirements arrangement for the "life-of-the-program," and Interplex Mexico is expressly prohibited from terminating the Contract. The Agreement and GTC require Interplex Mexico to deliver the Parts at the agreed-upon prices. The Agreement and GTC also require timely delivery of all Parts ordered by Sogefi:

> Time and quantities are of the essence under this Order. Seller agrees to 100% on-time delivery of the quantities and at the times specified by Buyer, as set forth in this Order Failure to meet agreed delivery time and quantities shall be considered a breach of this Order and Seller shall pay to Buyer any damages or expenses imposed upon or incurred by Buyer as a result of such breach.

This requires Interplex Mexico to deliver all Parts ordered by Sogefi on time and in the quantities ordered.

The GTC further requires Interplex Mexico to indemnify Sogefi for Interplex Mexico's breach of the Agreement:

> To the fullest extent permitted by law, Seller will defend, indemnify, and hold harmless Buyer . . . against all damages, claims, or liabilities and expenses (including attorneys' fees and other professionals' fees, settlements, releases and judgments) to the extent such damages, claims, or liabilities and expenses arise out of or relate in any way to Seller's representations, performance or obligations under this Order . . . .

The parties also agreed that money damages would be an inadequate remedy to Sogefi if deliveries are not made as required, and that injunctive relief would be appropriate:

> In an action brought by Buyer to enforce Seller's obligations in connection with the production or delivery of Supplies breach of any agreement, order or the [GTC] . . . Seller acknowledges and agrees that monetary damages are not a sufficient remedy for any actual, anticipatory or threatened breach of the Order and Buyer shall be entitled to specific performance and injunctive equitable relief . . . as well as Buyer's costs and reasonable attorneys' fees.

Finally, Interplex Mexico cannot terminate its supply obligations for the Parts under the Agreement or the GTC.

Sogefi asserts that Interplex Mexico breached the Agreement by failing to make on time and complete delivery of Parts that were to be delivered by April 21, 2021.[2] In the early morning hours of April 22, 2021, Sogefi received confirmation that Interplex Mexico had shipped Parts, but at a quantity significantly below the ordered amount. As of April 22, 2021, Interplex Mexico is approximately 14,000 Parts behind schedule.

Sogefi moved this Court for injunctive relief to avoid the irreparable harm that would result should Interplex Mexico continue to fail to timely deliver Parts to Sogefi. If this continues, money damages would not adequately compensate Sogefi for its harm suffered because, as is common in the automotive industry, Interplex Mexico's refusal to ship to Sogefi on time will result in Sogefi's

---

[2] Additionally, Sogefi's Complaint alleges that Interplex Mexico demanded a thirty percent price increase before it would deliver parts to Sogefi, in violation of the Agreement's fixed pricing provision. Compl. ¶ 35.

inability to supply parts to its customer, which will cause it to shut down its production lines on Friday, April 23, 2021. Sogefi's business relationships and reputation in the automotive industry will be irreparably damaged. Contractual damages are insufficient to remedy Sogefi's injury.

## II. LEGAL STANDARD

Sogefi seeks a temporary restraining order ("TRO") and preliminary injunctive relief under Fed. R. Civ. P. 65. A TRO "is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party." 11A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2951 (3d ed. 2021); *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

When applying this rule, a court evaluates the following four factors to determine whether to order injunctive relief:

(1) whether the plaintiff is likely to prevail on the merits of its claim;

(2) whether the plaintiff is likely to suffer irreparable harm without an injunction;

(3) whether the balance of hardships tips in the plaintiff's favor; and

(4) whether granting the injunction is in the public interest.

*Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc., v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (citation omitted).

## III. DISCUSSION

**A. Notice**

Pursuant to Rule 65(b) of the Rules of Civil Procedure, a temporary restraining order may be issued "without written or oral notice to the adverse party . . . only if . . . specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1)(A). The Rule also requires "the movant's attorney [to] certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). The strict requirements of Rule 65(b) do not apply if the nonmovant was given notice of the motion for TRO. 11A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2951 (3d ed. 2021).

In a Supplement to Sogefi's Motion, Sogefi's Counsel certifies that notice of this Motion was given to Defendant Interplex Mexico "via e-mail to counsel for Defendants." ECF No. 6, at 1 (citing Email, ECF No. 6-1). Sogefi has established, through previous exhibits, that the attorney to whom Plaintiff's Counsel sent notice, Min Wei Chow, sent correspondence to Plaintiff's Counsel via email on April 21, 2021. *See* ECF No. 2-6. Given that Min Wei Chow identified herself as "General Counsel" on behalf of the Defendants on that date, the Court finds that Plaintiff has provided sufficient evidence that Defendant Interplex Mexico has received notice of the Plaintiff's Motion. Accordingly, the Court now turns to whether Sogefi has satisfied the requirements for a TRO.

**B. Likelihood of Success on Merits**

The Parties' Agreement provides that Michigan substantive law governs. Sogefi established that it has a strong likelihood of prevailing on the merits, both under the terms of the Agreement, and under the terms of the GTC, which collectively are a valid, binding, and enforceable long-term contract for the sale of the Parts at the agreed-upon prices. Interplex Mexico has breached this contract by failing to timely deliver Parts this week. Additionally, Interplex

Mexico has repeatedly anticipatorily repudiated the valid, binding, and enforceable Agreement and the GTC with Sogefi by threatening to cease shipping Parts according to its contractual obligations, in violation of Section 2-610 of the UCC and Michigan Compiled Laws ("MCL") § 440.2610.

Interplex Mexico has stated its intention not to timely ship Parts under the Contract. This repudiation is a direct breach of its obligation to supply the Parts to Sogefi, and Interplex Mexico is expressly prohibited from terminating the Agreement and the GTC. Interplex Mexico promised in the Agreement and the GTC to maintain a supply of Parts for Sogefi, +/- 15% for volume fluctuations over 240 annual working days. Interplex Mexico's threat to continue untimely shipment of the Parts is without excuse and is itself a breach by anticipatory repudiation.

Granting Sogefi's request for injunctive relief constitutes an award of specific performance to which Sogefi is entitled under the UCC and the Agreement and the GTC. Under Section 2-711 of the UCC, when a seller has repudiated, the buyer may "in a proper case obtain specific performance." Mich. Comp. Laws § 440.2711(2)(b). Specific performance is particularly appropriate where the goods contracted for are unique or in short supply from a limited number of potential sources. Mich. Comp. Laws § 440.2716(1) ("Specific performance may be decreed where the goods are unique or in other proper circumstances"). Contracts "involving a particular or peculiarly available source or market" represent "the typical commercial specific performance situation." Mich. Comp. Laws § 440.2716, Cmt. 2. A plaintiff buyer's "inability to cover" the goods from another source is also "strong evidence" that specific performance is appropriate. *Id.*

Here, the Parts are unique components manufactured only by Interplex Mexico for Sogefi's use in the products Sogefi supplies to its customer. The Parts are not fungible goods that can be procured from any alternative source. They must meet demanding engineering specifications, and

any supplier must first obtain certification and validation before they can be incorporated into production vehicles. Interplex Mexico has threatened to cease timely shipment of these unique automotive components. Because of these circumstances, Interplex Mexico expressly agreed that money damages are not an adequate remedy for Sogefi:

> In an action brought by Buyer to enforce Seller's obligations in connection with the production or delivery of Supplies . . . breach of any agreement, order or the [GTC] . . . Seller acknowledges and agrees that monetary damages are not a sufficient remedy for any actual, anticipatory or threatened breach of the Order and . . . Buyer shall be entitled to specific performance and injunctive equitable relief . . . as well as Buyer's costs and reasonable attorneys' fees.

Indeed, Interplex Mexico is obligated to continue supplying Sogefi in a timely manner to avoid this harm. The parties agreed that if either party terminates the Agreement, Interplex Mexico must still continue to supply Sogefi to avoid any interruption in the supply chain, regardless of the reason for termination.

Thus, due to the unique nature of the Parts, Interplex Mexico's agreement that money damages are not an adequate remedy in this instance, and Interplex Mexico's agreement to ensure that there is no interruption in the supply of Parts, Sogefi is likely to succeed on the merits of its claim for specific performance.

## C. Irreparable Injury to Plaintiff Absent Injunction

Sogefi has established that it will likely suffer irreparable harm if Interplex Mexico is not enjoined. Courts have recognized the unique aspects of the automotive industry supply chain and the irreparable harm that inevitably will result from a supplier's refusal to deliver components. *See, e.g.*, *TRW, Inc. v. Indus. Sys. Assocs., Inc.*, 47 F. App'x 400, 401 (6th Cir. 2002). Under the just-in-time system, which is standard in the automotive industry, only minimal inventories are maintained, and deliveries must be made continuously to keep assembly lines operating.

If Interplex Mexico does not comply with its contractual obligations to continue to timely

supply the Parts, the resulting harm will be immediate and irreparable. Without continued supply of the Parts, Sogefi and its customer's production lines will grind to a halt. In addition to large financial losses from being shut out of future supply work with its customer. Sogefi's reputation as a reliable and on-time supplier will be severely damaged and it will likely lose future business opportunities with other potential customers.

The certainty that Sogefi will suffer immediate and irreparable harm supports entry of injunctive relief. Without prompt issuance of a TRO, it will be too late to prevent the line shutdowns and resulting harms to Sogefi's goodwill, business relationships, and reputation.

### D. Balancing of Hardships

In contrast to the potential irreparable harm to Sogefi, ordering Interplex Mexico to continue to timely supply the Parts to Sogefi merely maintains the status quo and requires Interplex Mexico to do nothing more than what it is obligated to do and has been doing for years under the Agreement and the GTC. Thus, the balance of harms tips decisively in favor of granting Sogefi's motion. *See Gates v. Detroit & Mackinac Ry.*, 115 N.W. 420, 421 (Mich. 1908) ("The defendant can suffer little injury by continuing to do temporarily as he has done for the last seven years . . .."); *Campau v. McMath*, 463 N.W.2d 186, 190 (Mich. Ct. App. 1990) (preserving status quo so that final hearing can be held without injury to either party is another valid consideration in issuing an injunction).

Furthermore, if Interplex Mexico does not continue to timely supply the Parts to Sogefi, other companies will not be able to receive the products they need and may be forced to shut down. Potential harm to non-parties like this—which can have additional down-the-chain effects—also weighs in favor of injunctive relief. *See Key Safety Sys., Inc. v. Invista, S.A.R.L., L.L.C.*, No. 08-CV-10558, 2008 WL 4279358, at *13 (E.D. Mich. Sept. 16, 2008) (holding that potential

shutdown of third-party OEMs based on lack of parts weighs in favor of granting injunctive relief).

**E. Public Interest Served by the Injunction**

Finally, there is no evidence the public will be harmed if a preliminary injunction is granted and Interplex Mexico is required to continue abiding by the same contractual obligations it has operated under for years. However, there will be harm to the public interest if the injunctive relief is not granted, as the public has an interest in seeing valid contracts enforced. *See Zimmer Inc. v. Albring*, No. 08-12484, 2008 WL 2604969, *9 (E.D. Mich. June 27, 2008); *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 848 (E.D. Mich. 1994).

The public also has an interest in avoiding supply chain shutdowns. *See, e.g., Key Safety Sys.*, 2008 WL 4279358 at *13 (holding that the public interest factor weighed in favor of injunctive relief where compelling seller to supply automotive part would avoid consequential plant shutdowns or layoffs and would avoid economic harm to the state, region, and nation); *Almetals, Inc. v. Wickeder Westfalenstah L, GmbH*, No. 08-10109, 2008 WL 4791377, at *10 (E.D. Mich. Oct. 29, 2008) ("[D]enying the injunction places at risk the operations of Almetals, and, correspondingly numerous customer assembly plants," which "would be disastrous, irreparably damaging Almetals' business and reputation, and causing further detriment to the economy."). Interplex Mexico's failure to timely deliver the Parts to Sogefi will likely cause Sogefi as well as its customers—and potentially other supply chain participants—to shut down production, potentially causing layoffs and economic harm throughout this automotive supply chain. The public interest thus weighs heavily in favor of the efficient administration of the automotive industry, and against these potential shutdowns. Therefore, all four factors weigh in favor of granting injunctive relief to Sogefi.

**F. Bond**

The Court further finds that no bond is appropriate in this case, where the Parties' contractual agreement expressly waives any bond requirement, and an injunction will not harm Interplex Mexico as Sogefi will continue to pay Interplex Mexico for all parts shipped.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Plaintiff's Motion for Temporary Restraining Order is **GRANTED**. The Court **ORDERS** that:

1. Defendant Interplexico Manufacturing Company, S.A. de C.V., is temporarily enjoined from violating its contractual obligations by continuing to miss delivery deadlines of automotive components to Sogefi under the Agreement and the GTC.

2. Defendant Interplexico Manufacturing Company, S.A. de C.V., is ordered to continue performance of its contractual obligations to timely deliver to Sogefi all of the automotive components ordered by Sogefi at the prices agreed upon in the parties' contract.

3. Defendant Interplexico Manufacturing Company, S.A. de C.V.'s conduct shall be enjoined in accordance with this Order until this Court conducts a preliminary injunction hearing on **May 4, 2021**.

Accordingly, the Court **SCHEDULES** a preliminary injunction hearing for **Tuesday, May 4, 2021 at 1:30 p.m.** At such time, the Court will determine whether the temporary restraining order shall be dissolved or whether a preliminary injunction shall issue. Defendant Interplex Mexico shall have until **Thursday, April 29, 2021, at 12:00 p.m.** to file a Response to Plaintiff's Motion. Plaintiff shall have until **Friday, April 30, 2021, at 12:00 p.m.** to file a Reply.

This Order shall take effect on this day at **5:00 p.m**.

The Court **DIRECTS** Plaintiff's counsel to immediately notify Defendant Interplex

Mexico of this Order and the scheduled hearing through electronic means. Plaintiff shall file corresponding certificates of service with the Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties. The Court additionally **DIRECTS** the Clerk's Office to send a copy of this Order to the Defendants at the following addresses:

> Interplexico Manufacturing Company S.A. de C.V.
> Parque Industrial Guadalajara Technology Park
> Calle Paseo del Norte No. 4690
> Zapopan, Jalisco, Mexico
>
> Interplex Sunbelt, Inc.
> c/o Incorporating Services, LTC.
> 1540 Glenway Drive
> Tallahassee, FL 32301

ENTER: April 23, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE