IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

SOGEFI USA, INC.,

       Plaintiff,

v.            CIVIL ACTION NO.  3:21-0262

INTERPLEX SUNBELT, INC.,
a Florida corporation,
INTERPLEXICO MANUFACTURING
COMPANY, S.A. de C.V.,
a Mexico corporation,

       Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Sogefi USA, Inc.'s ("Sogefi") Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 2. On April 23, 2021, the Court granted the Motion in part and entered a Temporary Restraining Order. TRO, ECF No. 9. Defendant Interplexico Manufacturing Company, S.A. de C.V. ("Interplex Mexico") responded to the Motion on April 29, 2021. Resp., ECF No. 15; Mem. of Law, ECF No. 16. Sogefi filed its Reply on April 30, 2021. Reply, ECF No. 17. The Court held a hearing on the Motion on May 4, 2021. At the hearing, the Court **GRANTED** Sogefi's Motion. This Memorandum Opinion follows.

### I.  FACTS[1]

Sogefi filed its complaint and motion for injunctive relief claiming that Sogefi and Interplex Mexico are party to a requirements contract under which Interplex Mexico supplies

---

[1] The facts contained in this section are a brief summary of the facts presented by the parties in briefings and via the testimony of witnesses Todd Gregory and Michael Antonio Bueno Silva at the hearing on May 4, 2021.

Sogefi with actuator covers ("parts"). Sogefi then incorporates the parts into products it ships to its customer, General Motors ("GM"). According to Sogefi, the parties first entered into the "Contract of Supply" ("Contract") on June 28, 2018. *See* Contract of Supply, ECF No. 23-1. The Contract of Supply expressly incorporates Sogefi's "North American General Purchasing Terms and Conditions" ("GTC"). The GTC provides that the Contract is a requirements agreement that is to last for the "life-of-the-program" and that Interplex Mexico is prohibited from terminating the agreement.

Since the original Contract of Supply was executed on June 28, 2018, Sogefi submits that two additional revisions have been issued. *See* First Revision, ECF No. 23-2; Second Revision, ECF No. 23-3.[2] The first revision is dated October 15, 2018 and it amended the Contract of Supply in Interplex Mexico's favor, increasing the item price per actuator from $1.62 to $1.98. The second revision is dated September 25, 2019, and it retained the same item price listed in the second revision but amended the start of production date for the "GM 50V" program. All three versions of the Contract of Supply incorporate the GTC.

At the hearing, Sogefi's Plant Buyer Todd Gregory testified that the month after the first Contract of Supply was executed, Interplex Mexico began supplying the parts to Sogefi. Interplex Mexico continued to make deliveries of the parts as ordered by Sogefi, apparently without issue, over the next two and a half years.

In filing this lawsuit, Sogefi asserts that Interplex Mexico breached the Contract by failing to make on time and complete delivery of parts in April 2021. The parts were to be delivered by April 21, 2021. By the early morning hours of April 22, 2021, Sogefi received confirmation that Interplex Mexico had shipped Parts, but at a quantity significantly below the ordered amount. As

---

[2] All three versions of the Contract of Supply are marked with the same contract number, "Contract N. 170356."

of April 22, 2021, Interplex Mexico was approximately 14,000 parts behind schedule. On April 23, 2021, this Court entered a TRO requiring Interplex Mexico to comply with the Contract of Supply.[3] *See* TRO, ECF No. 9.

Sogefi also claims that Interplex Mexico has committed an anticipatory breach of its June order. Sogefi submitted into evidence a chain of emails between Sogefi and Interplex Mexico representatives. Email Chain, ECF No. 23-4. One email, dated April 22, 2021, from Interplex Mexico's Customer Service Coordinator David Torres provided Interplex Mexico's delivery dates for April through September 2021. *Id.* at 2. That emails shows that Interplex Mexico was to deliver 15,000 parts on June 7, 2021. *Id.*[4] Five days later, on April 27, 2021, Davis Torres sent another email in which the words "Not accepted, out of lead time," were added below the June 7th delivery date. *Id.* at 1. At the hearing, Interplex Mexico confirmed that it did not intend to make the June delivery.[5]

Interplex Mexico disputes the facts as alleged by Sogefi. It maintains that the written contract upon which Sogefi has based this case and its motion for injunctive relief is unsigned and therefore not enforceable. As additional support for its claim that no contract was formed, Interplex Mexico points to emails that were sent in December 2019 in which an Interplex Mexico representative purportedly objected to the terms and conditions contained in the second revision of the Contract of Supply. *See* Alcantar Email, ECF No. 23-10. In the email, Interplex Mexico objected to the Contract of Supply's language stating that the contract could be accepted by tacit agreement, and the email further stated:

we haven't formally accept the contracts terms in writing, we are still reviewing the

---

[3] At the hearing on the preliminary injunction, the parties represented to the court that Interplex Mexico has since supplied all or most of the April parts.
[4] Interplex Mexico disputes the intent of the April 22, 2021 email.
[5] Interplex Mexico maintains that it cannot fill the June delivery because it was provided insufficient lead time and because its resin supplier has filed a force majeure notice.

contract documents and to put on record that we have not agreed to or accepted the terms of the Contract, the SOGEFI General Purchasing Conditions and/or the specific conditions set out in the Contract of Supply.

*Id.* at 1.

Additionally, Interplex Mexico argues that this Court lacks jurisdiction over it because it is a foreign corporation that has not been served in accordance with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention") *and* because it does not have sufficient minimum contacts with West Virginia to be haled into Court here.

Moreover, Interplex Mexico submits that even if there were a contract—which it vehemently denies—that it has not breached any obligations, because Sogefi has failed to provide sufficient "lead time" for its orders. It is Interplex Mexico's position that Sogefi has caused all the problems at issue in this case. Interplex Mexico maintains that it has repeatedly conveyed to Sogefi that it needs 20 weeks of lead time to deliver an order of parts. Its need for 20 weeks of lead time was included in Interplex Mexico's original quote to Sogefi and, in Interplex Mexico's view, is noted on the face of the Contract of Supply.[6] Interplex Mexico insists that both the April delay and its rejection of the June 2021 order were caused by Sogefi's failure to provide Interplex Mexico with adequate lead time for the deliveries.

Interplex Mexico also argues that the issued TRO and requested preliminary injunction are not prohibitory injunctions designed to maintain the status quo, but are in fact mandatory injunctions, which require Interplex Mexico "to manufacture and deliver certain parts on a set

---

[6] The Contract of Supply simply reads "Lead time: 20." Sogefi's Plant Buyer testified that he believed the Contract of Supply required 20 days of lead time. Interplex Mexico's Director of Program Management-Deputy General Director testified that it has always required 20 weeks of lead time because it has to source raw materials before it can produce the parts. Attorneys for both parties argued that their clients would not have entered into the Contract of Supply if the "Lead time: 20" meant what the opposing party suggests.

schedule that it has not agreed to."

Finally, Interplex Mexico argued at the hearing that Sogefi could not show a sufficient likelihood of irreparable harm, and briefly raised the issue that a preliminary injunction is inappropriate because Sogefi has an adequate remedy at law—a breach of contract cause of action for damages.

## II.  STANDARD FOR INJUNCTIVE RELIEF

In deciding whether to issue a preliminary injunction, the Court recognizes that it "is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief pendente lite of the type available after the trial." *Real Truth About Obama, Inc.* v. FEC, 575 F.3d 342, 345 (4th Cir. 2009), *vacated*, 130 S. Ct. 2371 (2010), *reinstated in part*, 607 F.3d 355 (4th Cir. 2010) (citations omitted). "Granting the ultimate relief requested, even temporarily, at an early point in the case, often prior to the issues even being joined in the pleadings, seems rightly reserved for only the most compelling of cases." *Dewhurst v. Century Aluminum Co.*, 731 F. Supp. 2d 506, 514 (S.D. W. Va. 2010), *aff'd*, 649 F.3d 287 (4th Cir. 2011).

In order to obtain a preliminary injunction, a party must establish four elements: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, *Inc.*, 555 U.S. 7, 20 (2008) (citation omitted). As such, the party seeking to obtain a "preliminary injunction must demonstrate by a clear showing that, among other things, it is likely to succeed on the merits at trial." *Dewhurst*, 731 F. Supp. 2d at 515 (internal quotation marks and citations omitted).

## III. DISCUSSION

## A. Interplex Mexico Has Received Sufficient Notice of the Motion for Preliminary Injunction

Interplex Mexico has argued that the Court lacks the ability to issue a preliminary injunction because it has not yet been formally served with the summons and complaint. The Court disagrees. Rule 65 does not by its terms require service of process prior to the court's issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(a) ("The court may issue a preliminary injunction only on notice to the adverse party.").[7]

Because Interplex Mexico's argument is not founded in the text of the Rule, it relies on a case from the Eastern District of Virginia and two Fourth Circuit cases addressing a court's power to enter orders enjoining non-parties. *See 3M Co. v. Christian Invs. LLC*, No. 1:11CV627, 2011 WL 3678144, at *3–5 (E.D. Va. Aug. 19, 2011); *Gilchrist v. Gen. Elec. Capital Corp.*, 262 F.3d 295, 301 (4th Cir. 2001); *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 958 (4th Cir. 1999).

In *3M Company*, Judge Ellis of the Eastern District of Virginia acknowledges that the case law on this issue is "somewhat sparse and neither clear not entirely unform." *3M Co.*, 2011 WL 3678144, at *3; *see Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300 (5th Cir. 1978) ("Rule 65(a) does not require service of process."); *Areal Plus Grp. v. Fisher Island Invs., Inc.*, No. 1:14-CV-20310-KMM, 2014 WL 12535947, at *5 (S.D. Fla. Sept. 30, 2014) (same). *But see Erard v. Johnson*, 905 F. Supp. 2d 782 (E.D. Mich. 2012) (finding service is a prerequisite to entering a preliminary injunction).

Here, the Court finds that prohibiting the issuance of a preliminary injunction before the completion of service is neither required by the Federal Rules of Civil Procedure nor binding precedent. While the decision in *3M Company* relied upon two Fourth Circuit cases, those cases dealt with the ability of the Court to issue preliminary injunctions against third persons who were

---

[7] In fact, the only reference to service in the rule, is that *once issued*, a preliminary injunction binds only those "who receive actual notice of it by personal service or otherwise." Fed. R. Civ. P. 65(d)(2). Even this provision does not *require* service. As Sogefi's counsel argued at the hearing, "or otherwise" must mean something.

not, and would never be, party to the lawsuit. *See Gilchrist*, 262 F.3d at 301 (addressing injunction entered against out-of-district creditors who were not party to bankruptcy action); *R.M.S. Titanic, Inc.*, 171 F.3d at 958 (finding district court could not enjoin a third-party company because the Court lacked personal jurisdiction over it). The situation in the instant case is distinguishable because Interplex is, or will be, a party to this action. A summons has been issued and service on the Interplex Mexico is impending.[8]

"[T]he power to enter temporary restraining orders is a power to preserve the status quo for the purposes of the litigation and the power to enter such orders in advance of the service of process is universally recognized." *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 516 (4th Cir. 1955).  In fact, TROs can be entered without *any* notice to a defendant. *See* Fed. R. Civ. P. 65(b)(1). The Court is unconvinced that its inherent authority to preserve the status quo necessarily ends 28 days after issuance of a TRO. The requested preliminary injunction is intended to maintain the status quo during the pendency of this litigation, and thus it is not clear to the Court why it would be precluded from granting a preliminary injunction simply because Sogefi has not yet had the opportunity to complete formal service.

While it is surely optimal for an opposing party to be served with process before an injunction is issued, a strict rule precluding the court from granting relief makes little sense in cases like the present one where the defendant attempts to demand service through complicated and lengthy procedures. *See H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842 (7th Cir. 2012) (noting that a requiring formal service of process before the court can order

---

[8] As will be more thoroughly discussed below, if the Contract of Supply applies, the incorporated GTC provides that Sogefi can serve Interplex Mexico via local procedures. Accordingly, Court has no reason to believe that service cannot be completed in a timely manner.

issue an injunction "would have the unfortunate effect of immunizing most foreign defendants from needed emergency injunctive relief").[9]

Having concluded that completion of formal service is not required, the Court also finds that Interplex Mexico has received sufficient notice under Rule 65. General Counsel for Interplex received a copy of the Motion the day it was filed. Interplex Mexico was able to retain local counsel in time to enter an appearance, submit memoranda in opposition to the Motion, present the testimony of a corporate representative, and appear before the Court to passionately argue against the issuance of the preliminary injunction. This clearly constitutes "notice." *See* Fed. R. Civ. P. 65(a).

Accordingly, the Court turns to the four factors laid out in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), to determine whether a preliminary injunction should issue.

## B. *Winter* Factors

### i. *Likelihood of Success on the Merits*

Whether Sogefi is likely to be successful on the merits, turns on whether the submitted Contracts of Supply are enforceable against Interplex Mexico. Because this is a diversity action, the Court will apply West Virginia law to determine whether a contract has been formed. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599–600 (4th Cir. 2004) ("A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules.").

West Virginia law requires an offer, acceptance, and consideration for a contract to be formed between parties. *See Cook v. Heck's, Inc.*, 342 S.E.2d 453, 458 (W. Va. 1986). Additionally, West Virginia's adoption of the Uniform Commercial Code provides that

---

[9] While the relief sought in *H-D Michigan* was a TRO, the court expressly remarks that the "plain language of Rule 65 . . . permits the issuance of a preliminary injunction 'only on notice' . . ." 694 F.3d at 842.

> a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

W. Va. Code § 46-2-201.[10]

The purpose of the this "statute of frauds" is "to require some objective evidence to demonstrate that a contract has been formed" before a court enforces it. 1 Hawkland UCC Series § 2-201:1. The sufficiency of a writing under the statute of frauds is broad. "All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." W. Va. Code § 46-2-201, cmt. 1. The only term that must be in writing is the quantity term. *Id.*

Similarly, the word "signed" has a broad definition. The comments to West Virginia's adoption of the UCC state that the word "signed" "includes any authentication which identifies the party to be charged." W. Va. Code § 46-2-201, cmt. 1. Many courts throughout the country have held that an individual or entity's use of a letterhead can satisfy the UCC's signature requirement.

---

[10] Interplex Mexico argued that West Virginia law does not govern to determine whether a contract was formed and that the Court should instead look to the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, 1489 U.N.T.S. 3 ("CISG"). While the Court does not believe this is accurate, it finds application of the CISG would not change the Court's ultimate conclusions. The Seventh Circuit recently explained contract formation under the CISG:

> A contract is formed under the Convention when there is a valid offer and acceptance. An offer is valid if it is "sufficiently definite and indicates the intention of the offeror to be bound in case of acceptance." Convention art. 14(1). An offer is "sufficiently definite" if it "indicates the goods and expressly or implicitly fixes or makes provision for determining the quantity and price." *Id.* Once a valid offer has been extended, the offeree can accept by words or conduct, but not by silence or inactivity. *Id.* art. 18(1). An acceptance "becomes effective at the moment the indication of assent reaches the offeror." *Id.* art. 18(2). Acceptance can also be demonstrated through the offeree's conduct, if allowed "as a result of practices which the parties have established between themselves or of usage." *Id.* art. 18(3)

*VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 251 (7th Cir. 2016). These principles are substantially similar to what is required under West Virginia law, if not more lenient.

It also appears that the statute of frauds does not apply to the CISG. *See* Convention art. 11 ("A contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form. It may be proved by any means, including witnesses."). Accordingly, application of the CISG would not serve to advance Interplex Mexico's contention that a contract was not formed, as it appears that its continuous performance alone would be sufficient to establish an enforceable agreement.

*See Benedict Mfg. Co. v. Aeroquip Corp.*, No. 242563, 2004 WL 1532280, at *4 (Mich. Ct. App. July 8, 2004). ("Case law indicates that an actual signature is unnecessary; rather, it is enough if the document contains the letterhead or the buyer's name and address."); *Owen v. Kroger Co.*, 936 F. Supp. 579 (S.D. Ind. 1996) (finding letterhead satisfied UCC signature requirement); *Cox Eng'g, Inc. v. Funston Mach. & Supply Co.*, 749 S.W.2d 508, 511 (Tex. App. 1988) ("[Plaintiff's] letterhead, including its address, appears at the top of the invoice, thus providing an authentication that identifies the party to be charged.").[11]

Interplex Mexico contends that it is not bound by the Contract of Supply because it never signed the contract. While it has been conceded that no Interplex Mexico representative signed the written Contract of Supply, Interplex Mexico undeniably began filling Sogefi's orders. From July 2018 to the present, Interplex Mexico has sent shipments to Sogefi almost monthly. *See* Invoice Tracking, ECF No. 23-12. This performance is likely sufficient to show that Interplex Mexico accepted Sogefi's offer—the Contract of Supply.[12]

Although Interplex Mexico contends that it objected to the contract, as evidenced by the December 2019 emails from Interplex Mexico to Sogefi, by that point in time, Interplex Mexico had already been performing under two previous revisions of the Contract of Supply, both of which contained the same provisions Interplex Mexico attempted to object to. Moreover, even though it "objected," it continued to supply the parts. Clearly, Sogefi did not accept the revisions that Interplex Mexico proposed in that email, and yet the parties continued to perform. Given its consistent and long-term performance, it would be hard to argue that Interplex Mexico was not a party to the contract.

---

[11] While the Court does not possess West Virginia case law coming to the same conclusion, the Court is satisfied that West Virginia's verbatim adoption of the UCC and its broad definition of "signed," supports a finding that West Virginia courts would conclude the same.

[12] Consideration has not been contested. Sogefi pays Interplex Mexico for the parts it orders.

Nevertheless, to the extent the statute of frauds requires written assent, Todd Gregory testified that Interplex Mexico referenced the Contract of Supply number on the invoices it sent to Sogefi after each delivery. Sogefi produced one such electronic invoice on Interplex letterhead, containing the full name and address of Interplex Mexico. Invoice, ECF No. 17-4.[13] Sogefi also produced emails showing Interplex Mexico representatives referring to the product forecasts in "the contract" and discussing delivery dates through at least this September 2021. Production Emails, ECF No. 17-3; Email Chain, ECF No. 23-4.[14] Interplex Mexico's repeated written references to the Contract, in conjunction with Interplex Mexico's consistent performance, afford a basis for the Court to believe Sogefi is likely to succeed in proving that a contract was formed and the statute of frauds is satisfied. *See* W. Va. Code § 46-2-201, cmt. 1.

So then the question becomes, is it likely that Sogefi can prove a breach of the contract? While the Court finds the question is closer than it initially believed, it is satisfied that the answer to that question is yes. First, the Court finds it is likely that Sogefi can prove that Interplex Mexico breached the contract by providing late and insufficient shipments in April 2021. Second, as addressed below, if Interplex Mexico is bound by the Contract of Supply and the terms of the GTC apply, then Michigan's law and adoption of the UCC will govern the dispute. Michigan law provides that anticipatory contract breaches are actionable. *See* Mich. Comp. Laws § 440.2610 ("When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may . . . resort to any remedy for breach . . .."). Sogefi currently has an anticipatory breach claim based upon Interplex Mexico's representations that it cannot meet the parts supply requested for June.

---

[13] This exhibit was not introduced by Sogefi at the hearing, however it was submitted as an exhibit to Sogefi's reply brief.

[14] This email chain also reinforces the notion that Interplex Mexico believed themselves to be bound by a requirements contract, as it shows its intent to supply units over the next four months.

The Court finds that the Sogefi is likely to succeed on that claim, given Interplex Mexico's statements that it does not intend to supply the parts.[15]

The Court notes that if Sogefi is able to prove the existence of a contract, as the Court believes it will be able to do, the majority of Interplex Mexico's arguments in opposition of the preliminary injunction are mooted. The second page of the Contract of Supply specifically incorporates Sogefi's GTC. Section 33 of the GTC reads,

> 33. GOVERNING LAW; JURISDICTION: This Order is to be construed according to the laws of the State of Michigan, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any conflict of law's provisions that would require application of another choice of law. Any litigation on contractual claims arising from this Order may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyer's option, in court(s) having jurisdiction over any Buyer's location listed above, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions or proceedings by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Order was issued.

If the parties are bound by this provision, the following conclusions necessarily result. First, Michigan law applies to the contractual dispute. Second, because this Court has jurisdiction over Sogefi's location, Interplex Mexico has consented to the jurisdiction of this Court. Third, Interplex Mexico has consented to local service procedures. While the Court makes no definitive ruling on whether the Contract applies, the Court assumes that Sogefi will proceed to serve Interplex Mexico as permitted by West Virginia law.

ii. *Likelihood of Irreparable Harm to Plaintiff*

The Court finds that there is a likelihood of irreparable harm to reputational standing of Sogefi in the automotive industry if Interplex Mexico fails to supply the parts in the Contract. Mr.

---

[15] The Court does not hesitate to recognize that there remains a significant factual dispute about the lead time required for each delivery. As stated at the hearing, the Court makes no finding as to what lead time the Contract of Supply requires.

Gregory testified that GM accounts for 30 percent of Sogefi's business. He further testified that Sogefi was forced to shut down production for 4 days in April due to Interplex Mexico's shipping delays. GM was forced to shut down its production lines for 1 day. Pursuant to its agreements with GM, Sogefi works on a tight turn around schedule; if it is unable to meet GM's requirements in the future, it will likely result in significant impact to the employees of both Sogefi and GM and to the Sogefi's reputation as a reliable supplier. The Court finds that this harm is likely to be immediate and irreparable. *See TRW, Inc. v. Indus. Sys. Assocs., Inc.*, 47 F. App'x 400, 401 (6th Cir. 2002) (affirming grant of preliminary injunction where the district court found automaker would suffer irreparable harm in the form of a loss of good will and undermined business relationships if its airbag supplier failed to supply parts).

   iii.   *Balance of Equities*

In contrast to the potential irreparable harm to Sogefi, ordering Interplex Mexico to continue to timely supply the parts to Sogefi merely maintains the status quo.[16] Accordingly, the Court finds that Sogefi has sufficiently shown the balance of equities tips in its favor. *See Gates v. Detroit & M. Ry. Co.*, 115 N.W. 420, 421 (Mich. 1908) ("The defendant can suffer little injury by continuing to do temporarily as he has done for the last seven years, while the complainant will suffer serious if not irreparable loss.").

   iv.   *Public Interest in an Injunction*

Finally, the Court remains satisfied that there is no evidence the public will be harmed if a preliminary injunction is granted and Interplex Mexico is required to continue abiding by the same contractual obligations it has operated under for years. On the other hand, there is a risk of harm to the public interest if the injunctive relief is not granted. Keeping a supply chain open keeps

---

[16] See Section D, *infra*, for a greater discussion of prohibitory versus mandatory injunctive relief.

people working, keeps trade crossing the borders, keeps companies producing important products, and keeps important products in the marketplace. Automobiles are essential to modern day life, and disruption of the supply chain would not only hurt Sogefi, but the public as well. *See Key Safety Sys., Inc. v. Invista, S.A.R.L., L.L.C.*, No. 08-CV-10558, 2008 WL 4279358 (E.D. Mich. Sept. 16, 2008) (finding the public interest factor weighed in favor of issuance when the preliminary injunction would avoid automotive plant shutdowns, layoffs, and resulting harm to the economy).

## C.  The *Winter* Factors Weigh in Favor of Relief

The Court finds Plaintiff Sogefi has shown a likelihood of success on the merits, irreparable harm in the absence of relief, a balance of equities in its favor, and a public interest in issuing a preliminary injunction. Thus, as stated at the hearing, the Court is satisfied that the Motion for Preliminary Injunction should be granted.

## D.  The Requested Injunction is Prohibitory in Nature

Interplex Mexico has argued that the TRO entered by the Court and the requested preliminary injunction are inappropriate because the injunctive relief is mandatory in nature rather than prohibitory. Prohibitory preliminary injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending. *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). Mandatory injunctions, on the other hand, do not serve to preserve the status quo. *Id.* at 320. The Fourth Circuit has defined "the status quo" to mean the "last uncontested status between the parties which preceded the controversy." *Id.* (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012)).

While mandatory preliminary injunctions generally require a defendant to make affirmative actions, such a requirement does not necessarily make an injunction mandatory in

nature. *See Aggarao*, 675 F.3d at 378 ("'To be sure, it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions,' but as the Tenth Circuit has explained, '[s]uch an injunction restores, rather than disturbs, the status quo ante.'") (quoting *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004)); *see United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 10 (1st Cir. 1987) (holding that injunction requiring the defendant to pay insurance premiums was prohibitory in nature because the "last uncontested status . . . was a status in which [the defendant] paid the necessary premiums").

Requiring Interplex Mexico to continue what it has done for almost three years would serve only to restore the last uncontested status between the parties, not to disturb the status quo. Accordingly, the Court is satisfied that the requested preliminary injunction is prohibitory in nature.

### E. Sogefi Must Post Nominal Bond

Federal Rule of Civil Procedure 65(c) provides that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The Fourth Circuit has held that court has discretion in setting the bond amount, but "it is not free to disregard the bond requirement altogether." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999). Failure to impose a bond constitutes reversible error. *Id.* The Court does, however, have the discretion to set the bond at a nominal amount. *Id.* at 421 n.3.

The issue of bond was not raised by either party at the hearing. The Court remains satisfied that the risk of harm to Interplex Mexico is low, as Sogefi is required to pay Interplex Mexico for

all parts shipped.[17] Accordingly, the Court sets the bond in this case at $100.00.

**IV. CONCLUSION**

In light of the foregoing findings, Plaintiff's Motion for Preliminary Injunction is **GRANTED**. ECF No. 2.

1. Defendant Interplexico Manufacturing Company, S.A. de C.V., is preliminarily **ENJOINED** from violating its contractual obligations by continuing to miss delivery deadlines of automotive components to Sogefi under the Agreement and the GTC.

2. Defendant Interplexico Manufacturing Company, S.A. de C.V., is **ORDERED** to continue performance of its contractual obligations to timely deliver to Sogefi all of the automotive components ordered by Sogefi at the prices agreed upon in the parties' contract.[18]

3. Defendant Interplexico Manufacturing Company, S.A. de C.V.'s conduct shall be enjoined in accordance with this Order until this matter is concluded.

4. Finally, the Court **ORDERS** Plaintiff Sogefi to post a security of $100.00 by **5:00 PM** on **Monday May 10, 2021**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

Enter: May 7, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[17] Having found that Sogefi is likely to succeed on its argument that Interplex Mexico is bound by the Contract of Supply and its incorporated terms, the Court notes that the GTC expressly waives any bond requirement.
[18] The controlling Contract of Sale is the one in effect as of the date Sogefi's Complaint was filed.